IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Keith Adger Smyth, ) | C/A No. 0:13-2691-RBH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Neal Urch, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

The plaintiff, Keith Adger Smyth, a self-represented pretrial detainee, filed this civil rights matter pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 43.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Smyth of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendant's motion. (ECF No. 45.) Smyth filed a response in opposition. (ECF Nos. 51 & 54.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendant's motion should be granted.

**BACKGROUND**

Smyth alleges that, while a pretrial detainee at the Spartanburg County Detention Center, he was denied medication; he was provided with inadequate food; his personal mail and other property was taken from him; and he was denied canteen, phone, and television privileges. He also alleges that his legal mail was opened and that he should be moved out of "lock-up." Smyth references

several individuals with regard to many of his claims; however, the sole named defendant is Neal Urch—the director of the detention center. Smyth seeks monetary damages.[1]

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

---

[1] To the extent that Smyth raises additional claims in his response to the defendant's motion, such as a possible claim of denial of religious materials, Smyth has not filed a proper motion to amend his Complaint to include any additional claims. Accordingly, such claims are not properly before the court. See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F.Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").



entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.      First Amendment (Legal and Personal Mail)**

Smyth appears to allege that his legal mail was opened and that his personal mail was withheld. Inmates retain their First Amendment rights while incarcerated. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The United States Court of Appeals for the Fourth Circuit has held that "[w]ithout question, the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ." Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999). Legal mail may not be opened outside of the presence of the prisoner or addressee. See Wolff v. McDonnell, 418 U.S. 539, 575 (1974). However, Smyth does not allege that Defendant Urch opened his legal mail, but rather an individual identified as "T. Hadden." (Compl., ECF No. 1 at 4.). Moreover, although Smyth alleges that his legal mail was



taken from him, he appears to acknowledge that this mail was placed in his property bin because the detention center's policy allows detainees to keep only three inches worth of legal paperwork in their possession. (Id.)

The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 677. Indeed, the dissent in Iqbal opined that, "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." Id. at 693 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates). Accordingly, as Smyth has failed to allege that Defendant Urch personally participated in the deprivation or opening of his legal mail, Defendant Urch is entitled to summary judgment as to this claim.

Additionally, Smyth has not alleged any injury from the alleged deprivation of his legal mail. It is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). To state a cognizable claim for denial of meaningful access to the courts a prisoner must allege a specific, actual injury resulting from the alleged denial. Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996). Moreover,

> the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

Christopher v. Harbury, 536 U.S. 403, 415 (2002). As stated above, Smyth has not demonstrated any actual injury as required to state a claim for denial of access to the courts. See Cochran, 73 F.3d at 1317 (holding that the district court properly dismissed a claim for denial of access to the courts where the plaintiff failed to identify any actual injury resulting from official conduct); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir. 1993) (observing that a prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access"). As Smyth cannot demonstrate an actual injury, summary judgment is appropriate as to this claim.

To the extent that Smyth alleges that his *personal mail* was withheld, this allegation fails to rise to the level of a constitutional violation, as he has a meaningful post-deprivation remedy available under state law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Mora v. City of Gaithersburg, Md., 519 F.3d 216, 230-31 (4th Cir. 2008) (concerning the intentional taking of guns and ammunition from the plaintiff); Bogart v. Chapell, 396 F.3d 548, 561-63 (4th Cir. 2005)

(finding that intentional destruction of the plaintiff's animals did not violate the due process clause because South Carolina afforded a meaningful post-deprivation remedy for the loss of animals). Moreover, Smyth appears to allege that unnamed detention center officers withheld his personal mail rather than Defendant Urch. As stated above, personal participation of a defendant is a necessary element of a § 1983 claim, and a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. See Trulock, 275 F.3d at 402; see also Monell, 436 U.S. at 691-94. Moreover, Smyth has failed to plead facts sufficient to go forward on a supervisory liability theory based on Fourth Circuit precedent. See Carter, 164 F.3d at 221; Shaw, 13 F.3d at 798. Accordingly, Defendant Urch is entitled to summary judgment on these claims.

**C.     Deliberate Indifference—Conditions of Confinement**

Smyth argues that he should be moved out of lock-up and appears to allege that, as a result of his custody status, he was denied canteen, phone, and television privileges.[2] Conditions of confinement of pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535, 537 n.16 (1979); see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth

---

[2] To the extent that Smyth alleges that Defendant Urch required Smyth to pay for unspecified hygiene items, the court observes that such claims do not rise to the level of a constitutional violation. See, e.g., Reynolds v. Wagner, 128 F.3d 166, 173-74 (3d Cir. 1997) (finding that the deliberate indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical care decisions made by most non-prisoners in society); see also Hamm v. Riley, C/A No. 0:05-2046-HMH-BM, 2007 WL 1377611, *9, 15 (D.S.C. May 7, 2007) (finding that a detention center's policy of deducting the costs of hygiene products and a co-pay for medical services was not a violation of detainee's constitutional rights).



Amendment." Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243-44 (1983) and Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992)). Therefore, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees.

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer, 511 U.S. at 832 (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff asserting unconstitutional conditions of confinement must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a prisoner confined in a jail,

prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Smyth fails to allege or demonstrate that he suffered a serious or significant physical or mental injury as a result of the alleged conditions, or that there was a substantial risk of such serious harm. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (stating that only an "extreme deprivation," which is a "serious or significant physical or emotional injury resulting from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement). Moreover, to the extent Smyth complains generally about his custody status, the court notes that a prisoner has no constitutional right to any particular custody or security classification, see Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (noting that prisoners have no constitutionally protected interest in prison classifications or rehabilitative programs), and no constitutional right to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. See Olim v. Wakinekona, 461 U.S. 238 (1983); see also Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.' ") (alterations in original) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)). Further, federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. See Sandin v. Connor, 515 U.S. 472, 483-84 (1995) (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"); see also Wolff v. McDonnell, 418 U.S. 539, 558-62 (1974). While a detainee may

not be punished prior to the adjudication of guilt, he may be subjected to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment." Bell, 441 U.S. at 535-36. To establish impermissible punishment, "a detainee must show either 1) an 'expressed intent' to punish or 2) a lack of a reasonable relationship 'to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.'" Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citations omitted).

Smyth's conclusory allegations fail to show that his classification status constituted impermissible punishment or implicated a protected liberty interest, and fail to state a claim of constitutional magnitude regarding his security or custody classification. Therefore, the defendant's motion should be granted with regard to any claim concerning Smyth's custody classification or conditions of confinement.

**D.     Deliberate Indifference—Medical Treatment**

Smyth alleges that he was denied medication and that he was provided with inadequate food that has resulted in his losing weight. The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." Estelle, 429 U.S. at 105. To establish a claim under the Eighth Amendment for deliberate indifference, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently



culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104).

With regard to the objective prong, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). With regard to the subjective prong, a prison official is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious medical needs of the inmate." Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment

fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

As an initial matter, the Defendant Urch is a non-medical individual. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id. Smyth has made no allegation or showing that Defendant Urch, as a non-medical individual, denied Smyth medication. The court further observes that, to the extent Smyth alleges that he was denied medication by a doctor at the detention center, such claims have been addressed and ruled on by this Court in a previous civil action. See Smyth v. Bianco, C/A 0:13-2862-RBH (finding that Defendant Salvador Bianco, a doctor at the detention center, was entitled to summary judgment).[3] With regard to his allegations of inadequate food portions, Smyth's Complaint and response in opposition appear to allege that Defendant Urch was responsible in his role as director in that he supervised the kitchen staff. As stated above, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell, 436 U.S. at 691-94.

---

[3] See also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."); Mann v. Peoples First Nat'l Bank & Trust Co., 209 F.2d 570, 572 (4th Cir. 1954) (approving trial court's taking judicial notice of proceedings had before it in prior suit with same parties).



Further, Smyth does not allege that Defendant Urch personally participated in or had knowledge of the alleged deprivation of medication or that Defendant Urch had knowledge of Smyth's weight loss from the alleged insufficiency of food. See Trulock, 275 F.3d at 402. Similarly, Smyth has failed to plead facts sufficient to go forward on a supervisory liability theory based on Fourth Circuit precedent. See Carter, 164 F.3d at 221; Shaw, 13 F.3d at 798. Accordingly, as Smyth has failed to establish that Defendant Urch had knowledge of the alleged deprivations of which Smyth complains, no reasonable jury could find that Defendant Urch had a sufficiently culpable state of mind such that he was deliberately indifferent to Smyth's medical needs. Defendant Urch is therefore entitled to summary judgment as to this claim.

**E.     Other Claims**

To the extent Smyth is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

**RECOMMENDATION**

For the above reasons, the court recommends that the defendant's motion for summary judgment be granted. (ECF No. 43.)

October 23, 2014                                                                        _____
Columbia, South Carolina                                                    Paige J. Gossett
                                                                                                     UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).